# NEGLIGENCE—CHARGE TO JURY.

[Harrison Circuit Court.]

## *P. C. C. & St. L. Ry. Co. v. William Moreland.

**1. When Negligence is a Question of Law.**

Where a person can easily avoid a place of known danger, but takes the chances of going into it, the question whether he is guilty of negligence, is a question of law and is not for the jury.

**2. Rule Where Danger is Known and Can be Avoided.**

A railway company owes no higher duty to its employes, in respect to the safety of a place to work, than a municipal corporation owes to its citizens in respect to its streets. The rule is, that, if the employe can easily avoid a known place of danger, but takes the chance of going into it, he cannot recover. Schaefler v. Sandusky, 33 Ohio St. 246, followed. ↘

**3. Rule Applied.**

A railroad company is not liable for injuries to a section hand caused by the falling of ice from a ledge at the side of the railroad track, where it appears that such employe would not have been injured by the falling ice while at work, but that, to avoid a passing train, which could have been seen several hundred yards away, he stepped to the left of the track and close to the ledge, when he could easily have stepped to the other side of the track or farther along on the left side, and thus have avoided the danger of which he knew, and had the same means of knowing as the foreman under whom he was working.

**4. Only Questions for the Jury.**

The only questions, in such case, which could have been submitted to the jury were: whether the employe was guilty of negligence in stepping to that side of the track and close to the ledge, to avoid the passing train; and whether the railroad company was guilty of negligence in putting plaintiff at work where he would naturally, according to custom, put himself in danger, if he should leave the track to avoid a train.

**5. If Mutually at Fault no Recovery Could be Allowed.**

If it should be conceded that the section boss was guilty of negligence in placing the employe at that point and in not anticipating that the train would pass and that the employe might go near the ice, the latter was also guilty of some fault in not looking after his own safety and in stepping near the ice when the jar of the train would be likely to cause it to fall; and if they were mutually at fault, the employe cannot recover.

**6. Erroneous Charge as to Master's Duty.**

A charge, in such case, that it was "the duty of the defendant and its agents having direction over its men, to have ascertained the dangerous character of that work; or, if defendant knew of, or could have discovered, the dangerous character of the work, it was its duty to do so," does not correctly state the law. The master is required to use ordinary care to ascertain the dangerous character of a place where his servants are required to work, but he is not required to ascertain it at all hazards.

**7. Erroneous Definition of Ordinary Care.**

A charge that "the ordinary care required on the part of either plaintiff or defendant, in order to be exempt from any legal consequences resulting from their conduct, is defined to be such care as prudent persons are accustomed to exercise under the peculiar circumstances of each case" is not a correct definition of ordinary care. The true rule is, that ordinary care or prudence is such care or prudence as persons of *ordinary* care usually exercise.

---

*For a later decision in this case, in which a judgment for the plaintiff for $2,500 was affirmed, see next case.

Railway Co. v. Moreland.

**8. Rule as to Charges in General.**

The charge of the judge to the jury should not be in the abstract, but in concrete, applicable to the particular case on trial. Usually the judge should say to the jury, that the facts as claimed by the plaintiff, if found to be true, do or do not constitute negligence on the part of the defendant. In like manner the judge should say to the jury, that the facts claimed by the defendant, if found to be true, do or do not constitute contributory negligence; and as every case turns upon a few controlling facts, the attention of the jury should be called to these controlling facts with instructions to return their verdict as they shall find these facts to be.

Heard on Error

*J. Dunbar*, for plaintiff in error.

*D. A. Hollingsworth*, for defendant in error.

Burrows, J.

This action was brought in the court of common pleas of this county to recover a judgment against the railway company, for injuries which he alleges in his petition were caused by the carelessness of the defendant company.

The issues were made between the parties and the case tried to a jury and a verdict in favor of the plaintiff was the result of the trial. A motion was made for a new trial and overruled by the court of common pleas and afterwards the petition in error was filed in this court, seeking to reverse the judgment entered in the court of common pleas.

Plaintiff below alleged in his petition that the defendant was guilty of negligence in this, that in the cut which is west of the Bowerston tunnel, as it is called, the defendant had permitted and allowed the accumulation of large quantities and masses of ice along and upon the rocks on the south side of this cut; that the defendant knew or ought to have known that this mass of ice, hanging from the rocks only a short distance from the track of the railway, was dangerous by reason of the liability of the same to fall on workmen or servants of the company working upon its tracks; that knowing, or having the means of knowledge, of this dangerous situation, the defendant ordered the plaintiff, William Moreland, to go to work upon the track of the railroad opposite to or near to a mass of ice that was more dangerous on account of a larger accumulation having been made at that point; more dangerous than it would have been to have worked at any other point in the cut.

It is also alleged in the petition that the defendant is guilty of negligence in running trains over its track at this point, where workmen were liable to be standing or walking between the track and these masses of ice.

The defendant, in its answer, denies all negligence and avers that the plaintiff was guilty of negligence which directly caused his own injury.

This, by reply, is denied by the plaintiff.

Upon the trial, there was very little dispute as to the facts. West of Bowerston tunnel, there is a deep cut on the south side, from the level of the track for two or three feet; extending up the side of this cut is dirt or fire clay; above that is a perpendicular ledge of rocks for a distance of twelve or fourteen feet, and above that to the top of the cut is simply earth, sloping back from the rocks.

There is no dispute as to distances or the quantity of ice, or the position of the tracks, or the position of the workmen.

From the perpendicular of this ledge of rocks to the tracks, the distance was some twelve feet. By means of the ditch being stopped, or for some other cause, at the particular point of this injury, the ice was hanging to this perpendicular ledge of rocks to the width of some eighteen or twenty inches, and the depth of a foot, as near as the testimony of any of the witnesses could ascertain it, and of the height along the rocks of some ten or twelve feet.

On the day of the injury some portion of this ice fell. The estimates are various, but substantially the same, that there was a quantity of two, three or five hundred pounds, or that two or three bushels of ice fell from this particular mass of ice.

There is no dispute as to other facts, that the plaintiff below had complete and full knowledge of the existence of this mass of ice at this point. There is no dispute but that the defendant, the railway company, had full and complete knowledge of the existence of this ice. There is no dispute but that the section boss ordered this plaintiff to go to work tamping or tapping the earth in under the ties opposite, or nearly opposite, this mass of ice. There is no dispute but what the plaintiff was injured, and seriously injured, by the falling of this ice.

It is also a matter that is uncontradicted that when the freight train was coming from the west, that the plaintiff stepped off the railroad track, where he was at work, and placed himself near this ice while the freight train was passing, and that while so standing there a portion of the ice fell and injured him.

The plaintiff alleges in his petition, and says in his testimony, that he had no knowledge of the dangerous condition of this ice or its liability to fall. He says also that he had some fear in that respect when he was required to go to this place to work; that others suggested to the section boss that it was dangerous; that the section boss took a jack handle and put it behind this projecting ice and undertook to throw it down, and thereupon told the plaintiff that he thought that it was safe.

When this ice fell, the proof shows that it fell almost in line with the perpendicular surface of these rocks and away from the railroad track, and the pieces, so falling, so far as there is any testimony, did not reach the railroad track to within four feet.

There is nothing in this evidence to show that there was any liability of this ice reaching the place where the plaintiff was at work, had it fallen while he was at work. At any rate, he was not injured while working upon the track.

While there are some allegations in the petition that the railway company was negligent in respect to the moving of its trains along this cut, the proof shows that this freight train was moving from four to eight miles an hour; no witness putting the speed higher than eight miles an hour. So that, if there is any allegation of negligence in the petition against the railway company as to the moving of trains, it is entirely unproved.

As I said before, there is no evidence of the ice being dangerous to a person working upon the track, while he was at work upon the track. The direct, proximate and only cause of this injury was the plaintiff stepping from the track where he was at work to avoid the coming train and placing himself in proximity to this ice.

Railway Co. v. Moreland.

While it is not stated in the petition that the plaintiff necessarily and by reason of being at work at this point upon the railroad, was compelled, in moving from the track, to go near this ice, yet perhaps it is implied or inferable from what was stated in the petition, that he naturally and necessarily, in avoiding the passing train, placed himself in proximity to this hanging ice pile.

It is evident from this recitation of the facts that the cause of the injury to the plaintiff was his position at the time the train passed.

It is not contended by counsel for the plaintiff below, that there was any real order or instructions from the railway company or this section boss that compelled or induced the plaintiff to go to the place where he went while the train was passing, to go into this place of danger, but it is rested solely upon the ground that it was usual and natural for persons working upon the track to step off upon the side at which they were working, and that the railway company or the section boss, in ordering him to work where he was ordered to work, should have anticipated that, in the passing of the train, he would step to that side where the passing train was liable to throw down this hanging ice, and ought to have warned him not to have stepped to that side, or kept some observation of his conduct; to have prevented it, if it was seen he was about to go into danger.

The case was not tried upon the issues that were fairly made by the pleadings.

The only question, really, that was for submission to the jury, was whether the plaintiff was guilty of contributory negligence in going into the dangerous position that he did, to avoid the passing train; and the other question is, whether the company was guilty of negligence in putting the plaintiff at work where he would naturally, according to the usual custom, put himself in danger, if he should leave the track to avoid a passing train.

Now, without reading from the record, the evidence fully shows that the plaintiff himself had at least a strong suspicion that it was dangerous to be about this hanging ice. He made inquiry about it; he saw the section boss trying to see whether it was firm or whether it was liable to fall, upon the jar of the train, or without a jar; he had his opinion about it; he knew that the section boss necessarily could have no greater knowledge about it than he could have; one man would know as much about that as another. No man could tell whether a mass of ice hanging to the rocks in this way would fall by the passing of the train, or by the jar, and one man could tell just as well as another. Whatever means the section boss employed to ascertain its condition, was open to the observation and knowledge of the plaintiff. They all knew there was a liability of its falling from the jar. The water was trickling down and it was only a question of time when it melted and would fall; but when, none of them knew.

While he was at work upon the track, from anything that appears in this record, he was perfectly safe. No piece of that ice, when falling, would reach to the track where he was at work.

It was also perfectly apparent from this record, from the testimony of this plaintiff himself, that it was a question of two steps with him, whether he left the track and sought a place of safety upon its north side or went upon its south side. The record shows that the train could

be seen approaching for a distance of six or eight hundred feet, and it was a freight train moving slowly; and he says he had plenty of time.

The question is asked him, "You would have been safe if you had gone to the north side?" and he says, "Certainly, but that was not the customary way of leaving the track. When a train is approaching, I leave on the south, or usually do."

Apparently, he was working a little further west than this mass of ice, but when the left the track he moved right under it or a little to the east of it.

It was a case where no one anticipated the falling of the ice at that time, and if plaintiff had had a strong suspicion of danger, it was not on his mind at that time, nor on the mind of the boss, or any of them; and he stepped off there and was hurt.

Now whose fault was it?

If he had had some knowledge or some suspicion of its being dangerous to approach that hanging ice, whose fault was it if he forgot it? Could it be said that he was lured into any sense of security by the opinion of the section boss? He knew exactly upon what that opinion was based. What caused this injury? The carelessness of the plaintiff, either in forgetting the danger of approaching this ice or stepping off there unnecessarily in disregard of the danger.

It is a question of law, and not to be speculated about by the jury, if a person can easily avoid a place of known danger, but takes the chances of going into it, whether he is guilty of contributory negligence or not, is not a question to be speculated about.

Take Schaefler v. Sandusky, 33 Ohio St. 246 [31 Am. Rep. 533]. This is a case which has been affirmed several times. The syllabus is:

"A person who voluntarily attempts to pass over the sidewalk of a city, which he knows to be dangerous by reason of ice upon it, which he might easily avoid, cannot be regarded as exercising ordinary prudence, and, therefore, cannot maintain an action against the city to recover for injuries sustained by falling upon the ice, even if the city would otherwise have been liable."

The jury, by special verdict, in this case found that he might have avoided it. The Supreme Court say, upon the findings of facts by the jury, that it may be fairly inferred that he could have easily avoided the obstruction.

Certain it is, that this plaintiff could easily have avoided this injury. He could have stepped off on the same side and moved along eight or ten feet away from this hanging ice and he would have been safe. He could have stepped off on the other side where it was perfectly safe and where there was no ice, and some twenty feet to the bank of this cut.

Shall it be charged to the railway company as a wrongful act on their part, to put him to work where he could go into danger if he saw fit, if he took no care for his own safety?

Why, any of us, if placed in the same position after being hurt by such a performance, would say simply, I was careless, I forgot about that ice hanging there; I ought not to have gone there. There is no rational man but what would accuse himself of negligence in the matter.

Now, in respect to Schaefler v. Sandusky, *supra*, the case I have read from. It is by statute made the duty of the city council—the council of the corporation to keep its streets and sidewalks in repair and free from nuisance and to allow no ice to accumulate. The party knows there is ice there, but he thinks he can go over it and has a right to be there,

walking on the sidewalk. If he voluntarily goes over it where he sees it is a risk, it is his own fault if he slips and falls and is injured, say the Supreme Court, as a matter of law.

Did this railway company owe any higher duty to the safety of its workmen than the corporation of the city did to its citizens?

The workmen of this company assumed all the ordinary risks incident to the employment. The workmen did more; they assumed all the risks to which they knew they were exposed.

If, in Schaefler v. Sandusky, *supra*, the party, as a matter of law, cannot recover who voluntarily goes upon a place that he knows is dangerous, how is it that a workman who voluntarily and unnecessarily places himself in the same hazardous position, and is injured, how can he say, "I am injured by the fault of the railway company," or any other? "It is not my own fault."

But, however this may be looked at by different minds, this proposition, certainly, all will agree to: That plaintiff was guilty of some fault. If the section boss was guilty of any fault in placing him there and not anticipating that the train would pass, or that he might go near this chunk of ice, he was also guilty of some fault in not looking after his own safety and in stepping near it when the jar of the train would throw it down; and if they were mutually in fault, as a matter of law, he has no right to recover.

Exceptions are also taken to the charge of the court in several respects.

Defendant excepts to what the court said, "that it was the duty of the defendant to have discovered the dangerous character of that work, if it could have done so."

Now, turning to the charge of the court, we find that the court did charge in this language: "It was the duty of the defendant and its agents, having direction over its men, to have ascertained the dangerous character of that work, or if the defendant knew of the dangerous character of the work, or could have discovered the dangerous character of the work, it was his duty to do so."

Now, in other parts of the charge, the court has told the jury that it was the duty of the defendant company to exercise ordinary care in procuring a safe place for the plaintiff to work, and in endeavoring to prevent injury to its servants, but in this part of the charge the jury is told that it was the duty of the defendant and its agents to have ascertained the dangerous character of that work.

It will be conceded by all lawyers that that is not the law. If that were the law, it would be only necessary to prove that the place where a man was set to work was dangerous; that he had no knowledge of its dangerous character and that he was injured by reason of it.

It is only the duty of fallible human men and fallible human corporations to exercise ordinary care to ascertain the dangerous character of the place where their workmen are set to work. That higher degree of care would be a degree of care that would make it impossible for anyone to be injured without making his employer liable.

Now, applied to this case, it made it the duty of the defendant and its servants to have ascertained whether this ice was liable to fall or not, not to take all ordinary precautions to ascertain it, not to take reasonable measures, such as human beings are supposed to take, but to have ascertained it at all hazard. They must find out at their peril whether it is liable to fall or not.

The court also, although it is not excepted to, did not give the ordinary definition of what is ordinary care, in this case.

At page 52 he says: "Both the defendant company and the plaintiff owed a legal duty toward each other, that is, both were required to exercise ordinary care. The ordinary care required on the part of either the plaintiff or defendant, in order to be exempt from any legal consequences resulting from their conduct, is defined to be such care as prudent persons are accustomed to exercise under the peculiar circumstances of each case."

What kind of prudent persons? Men of ordinary prudence or of the highest degree of prudence, or the lowest degree? The true rule, as declared by our Supreme Court is, that ordinary prudence or ordinary care, is such prudence as persons of ordinary care usually exercise.

No exception is taken to this and perhaps it is of no consequence in the case as it might not mislead the jury.

There is another exception to this charge, or rather two or three exceptions that we will notice.

Exception is taken to the charge in this language: "Also to what the court said about the dangerous character of that work in each several instance where it is repeated, or where he uses any expression as to the dangerous character of the work, in the charge."

"Defendant excepts to what the court said in submitting to the jury the question whether the defendant was guilty of negligence in the running of its train; also as to what the court said as to keeping the right of way safe, where the plaintiff was placed at work by the section boss; also in submitting to the jury whether the place where the plaintiff went to work was a place of safety, when sent to work there by the section boss; also whether his injuries resulted from going to work where he was directed; also to what the court said in submitting the question to the jury, whether the plaintiff was directed to work in a place where it was dangerous, by the section foreman."

We think all of these exceptions were well taken. They had no application to the real case as made by the proof.

It was only in proof that the injury resulted from his working upon the track, but such a claim as that was actually disproved and disproved by the plaintiff himself.

The plaintiff's own evidence shows he was not injured while working upon the track. It also shows beyond all question that there was no negligence upon the part of the defendant in running its train.

Plaintiff's evidence also showed that the place where he was set to work was not a dangerous place from this ice, yet all these questions are submitted to the jury, and what is remarkable about the case is, that neither counsel for the railway company nor the court in its charge, even suggested what was the negligence that was made in the proof.

The only possible negligence that was the direct or proximate, or any other cause of the injury to this plaintiff, was his stepping to the south side of the track while the train was passing and putting himself in proximity to this hanging ice; and the question should have been submitted to the jury, if it was to go to the jury at all, whether he was guilty of contributory negligence in thus putting himself near that ice, in dangerous proximity to it, knowing what he did know about its con-

Railway Co. v. Moreland.

dition; and the question should have been submitted to the jury only and solely as to whether the defendant company was guilty of negligence in putting him to work where a passing train would lead him naturally to step to the south side and come into a place of danger.

Nowhere in this charge is the jury told what the negligence of the case, that is, the actionable negligence, is.

All these things are put together and then the charge is of the most general character, and the jury are told to look to see whether by any act of omission or act of commission on the part of the defendant company the plaintiff's injury was caused; not even restricting it to the allegations of the petition.

The petition is read to the jury, as to what was the duty of the railway company and the failure to perform that duty, and all this is put to the jury by reading the petition, the answer and the reply. But, after the case has been heard and the evidence has been developed, then some of the allegations or averments of the petition were disproved. Many of them were disproved by the plaintiff's evidence, and it left some few facts, as we have seen, to be submitted to the jury, clearly and distinctly to pass upon these facts.

It was not a question whether there were any sins of omission or commission, but it was a question whether the defendant was guilty of negligence as to the specific charges in this case. Other things of omission or commission were not of any importance in this case. The Supreme Court of Ohio, in Coal Co. v. Estievenard, 53 Ohio St. 43 [40 N. E. Rep. 725], has passed upon this question.

I am reading paragraph six of the syllabus: "The charge of the court to the jury should not be as to abstract propositions of law, but should be confined to the law applicable to the facts of the case, which the evidence tends to establish, and the attention of the jury should be called to the controlling point or points of the case, so that the verdict may not be founded upon unimportant matters."

It would be instructive to all lawyers and judges to occasionally read this charge of the court below in Coal Co. v. Estievenard, *supra*, and the comments of the learned judge of the Supreme Court upon such charge.

The charge in this case was much more definite than in the case at bar. The defect in the charge on the question on the subject of contributory negligence is that it is in the abstract, dwelling on generalities and failing to deal with the facts in the case. The court did not tell the jury what facts would defeat a recovery, but contented itself with telling them to look to the evidence without telling them what use to make of such looking or the result thereof.

The charge of the court to the jury should not be in the abstract but in the concrete, applicable to the particular case or trial. Usually the court should say to the jury, that the facts as claimed by the plaintiff if found to be true, do or do not constitute negligence on the part of the defendant. In like manner the court should say to the jury, that the facts claimed by the defendant if found to be true, do or do not constitute contributory negligence; and every case turns upon a few controlling facts and usually one or two, and whichever way these are found by the jury the verdict of the jury should go.

The attention of the jury should be called to these controlling facts with instructions to return their verdict as they shall find these facts to be.

Now we think that the court in its charge to the jury erred in the particulars I have mentioned, and that the charge was subject at least to criticism for being not only in the abstract, but in submitting to the jury the inquiry as to acts of omission or commission that might lie entirely outside, and in this case did lie outside, of any actionable negligence that remained in the case after the evidence was put in.

The question of the running of the train was still left there by the charge, and the place where the plaintiff was sent to work being dangerous. If there had been nothing more than that about it the case was not a case to go to the jury.

The court failed to call the attention of the jury, and counsel for the defendant failed to request the court to call the attention of the jury, to the question of the negligence of the defendant or the contributory negligence on the part of the plaintiff upon which the case, if it should be tried, must turn.

The case is reversed, a new trial ordered and the cause remanded for a new trial.